UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X

ANGELA TESE-MILNER as CHAPTER 7
TRUSTEE OF THE ESTATE OF W.B.
DAVID & CO., INC.,

              Plaintiff,              04 Civ. 5203 (KMW)
                                                      <u>OPINION AND ORDER</u>

    -against-

DE BEERS CENTENARY A.G., ET AL.,

              Defendants.

--------------------------------------X
WOOD, U.S.D.J.:

    Plaintiff Angela Tese-Milner ("Plaintiff"), the Chapter 7
Bankruptcy Trustee of the Estate of W.B. David & Co., Inc. ("W.B.
David"), brings this antitrust action against Defendants Diamond
Trading Company, Ltd. ("DTC"), Central Selling Organization
("CSO"), CSO Valuations A.G. ("CSOV"), Diamond Development
Company N.V. ("Diamdel N.V."), Diamond Development Company S.A.
("Diamdel S.A."), Diamond Development Company, Ltd. ("Diamdel
Ltd."), De Beers Consolidated Mines, Ltd. ("Consolidated"), De
Beers Centenary A.G. ("Centenary"), De Beers S.A. ("DBSA"), and
DB Investments, Inc. ("DBI") (collectively "Defendants"),
alleging restraint of trade and unlawful conspiracy in violation
of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and
Section 340 of the Donnelly Act, N.Y. Gen. Bus. L. § 340(1).

    Currently pending before the Court are: (1) Defendants
Diamdel Ltd.'s, Consolidated's, Centenary's, DBSA's, and DBI's

1

("Moving Defendants[1]") motion to dismiss, pursuant to Federal
Rule of Civil Procedure 12(b)(2), for lack of personal
jurisdiction[2] (D.E. 154); (2) Defendants CSOV's, Diamdel N.V.'s,
Diamdel Ltd.'s, Consolidated's, Centenary's, and DBSA's motion to

---

[1] Although three different motions to dismiss, brought by
three different groups of Defendants on three different grounds,
are currently before the Court, this Order addresses in detail
only the motion to dismiss for lack of personal jurisdiction.
Accordingly, the Court refers to those Defendants who are moving
to dismiss for lack of personal jurisdiction as "Moving
Defendants," and to those Defendants who do not contest personal
jurisdiction as "Non-Moving Defendants."

[2] The Court notes that Defendant DBI is a latecomer to
Moving Defendants' motion to dismiss for lack of personal
jurisdiction.
    In Moving Defendants' Joint Memorandum of Law in Support of
their Motion to Dismiss the Amended Complaint for Insufficient
Service of Process and Lack of Personal Jurisdiction ("Supporting
Memo") (D.E. 155), Moving Defendants stated that DBI would not
join the motion to dismiss for lack of personal jurisdiction
because Plaintiff had not yet purported to serve DBI.  (Supp.
Mem. 1.)
    Later, in Moving Defendants' Joint Reply Memorandum in
Support of their Motion to Dismiss for Insufficient Service of
Process and Lack of Personal Jurisdiction ("Reply Memo") (D.E.
204), Moving Defendants stated that DBI would now join the motion
to dismiss for lack of personal jurisdiction because Plaintiff
had purported to serve DBI in the interim between the filing of
Moving Defendants' Supporting and Reply Memos.  (Reply Mem. 1.)
    Normally courts are reluctant to consider arguments first
presented in reply papers because of the potential for prejudice
to the opposing party.  In this case, however, the Court finds
that Plaintiff has not been prejudiced by DBI's late decision to
join this motion.  Because Plaintiff considers Defendants to be
an integrated enterprise, Plaintiff addressed the propriety of
jurisdiction over DBI in her Opposition to Defendants' Rule
12(b)(2) and 12(b)(5) Motion to Dismiss the Amended Complaint
("Opposition Memo") (D.E. 188), despite DBI's formal lack of
participation in the motion at the time Plaintiff filed her
papers.  (Opp'n Mem. 4.)  The Court therefore considers DBI's
motion to dismiss for lack of personal jurisdiction.

dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(5),
for insufficiency of service (D.E. 154); and (3) Defendants
CSOV's, DBI's, DBSA's, Consolidated's, Centenary's, Diamdel
Ltd.'s, Diamdel N.V.'s, and DTC's motion to dismiss, pursuant to
Federal Rule of Civil Procedure 12(b)(6), for failure to state a
claim for which relief can be granted (D.E. 162).

 For the reasons stated below, the Court GRANTS Moving
Defendants' motion to dismiss for lack of personal jurisdiction
with respect to Defendant Diamdel Ltd.  As to all remaining
Moving Defendants, the Court DENIES the motion to dismiss for
lack of personal jurisdiction, without prejudice to refiling
after the completion of limited jurisdictional discovery as to
whether Non-Moving Defendants are either agents or departments of
Moving Defendants, such that the actions of Non-Moving Defendants
can be imputed to Moving Defendants.

 Because the Court finds this jurisdictional issue to be
antecedent to questions of propriety of service and the
sufficiency of Plaintiff's claims, the Court also DENIES the
motion to dismiss for insufficiency of service and the motion to
dismiss for failure to state a claim for which relief can be
granted, also without prejudice to refiling after the completion
of jurisdictional discovery.

I. <u>Background</u>

 A. <u>Parties</u>

3

1. <u>Defendants</u>

All Defendants are business entities affiliated with the De Beers Group ("De Beers").  De Beers is the name of a group of related business entities involved in the production, purchase, and sale of diamonds.  De Beers has played a leading role in the diamond industry for decades.  (Am. Compl. ¶ 4.)

The parties disagree as to whether Defendants should be treated as separate entities or as a single integrated enterprise[3] by this Court.

Plaintiff alleges that Defendants, some of whom own and manage other Defendant companies, some of whom produce diamonds, and some of whom sell and market diamonds, form an "integrated enterprise in which the production and sale of diamonds are entangled in a 'symbiotic relationship.'"  (Opp'n Mem. 1.) Plaintiff refers to that integrated enterprise as De Beers, and often refers to individual Defendants as De Beers as well.[4]

---

[3] Plaintiff uses the term "integrated enterprise" to describe the alleged interconnectedness of Defendants' business structure and activities.  The Court, for simplicity's sake, will also use the phrase as well.  In other areas of law, but not in personal jurisdiction law, the phrase "integrated enterprise" conveys a specific legal meaning.  The Court uses the term only for its descriptive value and not to convey a legal conclusion.

[4] Plaintiff's allegations are at times confusing because, in accordance with her belief that De Beers is an integrated enterprise of which all Defendants are a part, Plaintiff refers interchangeably to individual Defendants, to "Defendants," and to "De Beers."  The Court will describe Plaintiff's allegations using her nomenclature.  The Court reads Plaintiff's allegations about "De Beers" as referring to all Defendants.

Defendants, however, maintain that Defendants are all "stand-alone firms engaged in their own world-wide businesses." (Reply Mem. 2.)

　　　　　　　　2. Plaintiff

Plaintiff is the Chapter 7 Bankruptcy Trustee of the Estate of W.B. David.  (Am. Compl. ¶ 5.)  W.B. David was a corporation engaged in the purchase and sale of diamonds in New York City, and was also the original plaintiff in this action.  (Am. Compl. ¶ 3.)

Unsecured creditors of W.B. David filed an involuntary Chapter 7 bankruptcy petition against W.B. David in January 2006. Subsequently, Plaintiff was appointed Trustee of the Estate of W.B. David.  Plaintiff now prosecutes her claim on W.B. David's behalf.  (Am. Compl. ¶¶ 5-6.)

B.  Plaintiff's Allegations

Plaintiff's claims arise from W.B. David's longstanding business relationship with Defendants.  From 1969 to 2003, W.B. David was a De Beers "Sightholder."  (Am. Compl. ¶ 3.)  In that capacity, W.B. David regularly purchased rough diamonds from De Beers entities.  (Am. Compl. ¶ 4.)

Plaintiff alleges that De Beers dominated the "diamond business" during the time period relevant to her claims, and maintained its dominance by various improper means, including controlling supply, managing prices, and acting collusively with

5

others in the diamond business.  (Am. Compl. ¶ 25.)  Plaintiff alleges that De Beers set out as a matter of business policy to violate United States' antitrust laws, and regularly and openly acknowledged its illegal monopolistic activities.  (Id.)

Plaintiff alleges that because of the monopolistic and anti-competitive activity of Defendants, W.B. David suffered harms, inter alia, paying a supracompetitive price for diamonds purchased from De Beers during the years W.B. David was a Sightholder.  (Am. Compl. ¶¶ 34, 39.)

C. Procedural Posture and Settlement in Related Case

In July 2004, W.B. David filed a lengthy complaint against over 100 defendants, including some of the current Defendants ("Original De Beers Defendants"), alleging violation of federal and state antitrust and racketeering laws in connection with the production, purchase, and sale of diamonds.

In October 2005, the Court entered default against the Original De Beers Defendants.  The Original De Beers Defendants moved to vacate the entry of default in December 2005, and the Court granted their motion in March 2007.

In July 2007, Plaintiff filed a shorter, Amended Complaint against the ten current Defendants.

Two months later, various groups of Defendants filed the three motions to dismiss currently before the Court.

In May 2008, Judge Stanley R. Chesler in the District of New

Jersey approved a settlement agreement in <u>Sullivan v. DB Investments, Inc., et. al.</u>, 04-2819 (SRC) (D.N.J.), a class action filed against various De Beers entities, including some of the current Defendants.  Plaintiff is a member of the <u>Sullivan</u> settlement class.

In June 2008, the Court ordered and received supplemental briefing from the parties on (1) the implications of the settlement agreement's release clause on the claims remaining before this Court; and (2) the implications of the settlement on this Court's personal jurisdiction over Defendants.

The parties agree that the settlement limits Plaintiff's claims in the instant case to those based on W.B. David's purchases as a Sightholder, and bars any claims based on W.B. David's purchases in a non-Sightholder capacity.  The parties disagree as to the impact of the <u>Sullivan</u> settlement on the personal jurisdiction issue, <u>see</u> <u>infra</u> Section II.C.2.

II.   <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

The Court must first address Moving Defendants' motion to dismiss for lack of personal jurisdiction.  <u>Arrowsmith v. United Press Int'l</u>, 320 F.2d 219, 221 (2d Cir. 1963) (stating that logic compels "initial consideration of the issue of jurisdiction over the defendant - a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim"); <u>Mende v. Milestone Tech., Inc.</u>, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003)

(noting that "[b]efore addressing Defendants' Rule 12(b)(6) motion to dismiss, the Court must first address the preliminary questions of service and personal jurisdiction").

A.   Standard of Review

On a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999).  Prior to discovery, a plaintiff need make only a prima facie showing of jurisdiction to survive a motion to dismiss.  A prima facie showing of jurisdiction means that the plaintiff "must plead facts which, if true, are sufficient in themselves to establish jurisdiction." Bellepointe, Inc. v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564 (S.D.N.Y. 1997).  Allegations that merely restate the legal standard are insufficient to constitute a prima facie showing. Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998).

B.   Jurisdictional Allegations

When deciding a motion to dismiss, the Court is not limited to considering facts alleged in the complaint.  A plaintiff may make its prima facie showing through "affidavits and supporting materials [,] containing an averment of facts that, if credited ..., would suffice to establish jurisdiction over the defendant." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir.

2001) (internal quotation marks and citations omitted)
(alterations in original).  At the motion to dismiss stage, all
allegations are construed in the light most favorable to the
plaintiff, and all doubts are resolved in the plaintiff's favor,
notwithstanding a controverting presentation by the moving party.
See A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d
Cir. 1993).

    1.  <u>Allegations Relating to All Defendants</u>

     A majority of Plaintiff's jurisdictional allegations are
based on the underlying assumption that Defendants operate as an
integrated enterprise.  The Court first reviews allegations in
this category.  They include: (1) allegations that De Beers is an
integrated enterprise; and (2) allegations that jurisdiction is
appropriate over De Beers, as an integrated enterprise.

    a.  <u>Allegations that De Beers Is an Integrated
Enterprise</u>

    According to Plaintiff, De Beers is not operated as numerous
separate entities, but as one integrated entity.  (Opp'n Mem. 1.)
Plaintiff alleges that De Beers openly admits the integrated
nature of its business operations.  For instance, Plaintiff
submits evidence of a 2001 De Beers' publication that proclaims
"De Beers is an integrated company whose core business is the
mining and marketing of rough diamonds."  (Stamell Aff. Ex. 7.)

    Pursuant to her theory of De Beers' corporate organization,

Plaintiff alleges that Non-Moving Defendants are the "sales arms" of De Beers, and are controlled by and accountable to Moving Defendants, who are the production, management, and ownership "arms" of De Beers.  Plaintiff alleges that although W.B. David directly interacted only with De Beers' sales arms, i.e. Non-Moving Defendants, all "defendants are equally subject to this Court's jurisdiction because De Beers is in fact an integrated company" and Non-Moving Defendants "are agents of their ultimate parents," i.e. Moving Defendants.  (Opp'n Mem. 13.)

In support of her agency argument, Plaintiff makes numerous allegations about the relationships among Defendants.  Plaintiff alleges, for instance, that the money paid to DTC and the Diamdels from diamond sales flows through to Consolidated, Centenary, and DBSA.  Plaintiff also alleges that CSO, DTC, and the Diamdels provide necessary services for their parent companies that the parent companies would otherwise have to perform themselves.  (Opp'n Mem. 3.)  Plaintiff submits an Affidavit from a former De Beers' employee stating that De Beers' "[d]iamonds are produced, i.e. mined or otherwise extracted, for purposes of sale.  If the CSO did not sort them, and DTC and Diamdel sell them, [Consolidated or Centenary] or DBSA would have to perform those tasks.  Indeed, the CSO, DTC and Diamdel are not stand-alone businesses that could operate separately from the production parts of De Beers."  (Wyndham Decl. ¶ 7.)

10

Plaintiff also alleges that Non-Moving Defendants are owned by Moving Defendants.  According to Plaintiff, DTC was wholly owned by Consolidated and Centenary until 2004, and is now owned by DBSA, which in turn is wholly owned by DBI.  Similarly, Plaintiff contends that Diamdel N.V. is indirectly owned by DBSA.  (Opp'n Mem. 21.)  Plaintiff further alleges that De Beers has been shifting corporate forms and affiliations regularly over the years to camouflage its business activities in the United States.  (Am. Compl. ¶ 8; W. David Aff. ¶ 14.)

Plaintiff also alleges that Defendants have overlapping management.  For instance, De Beers is alleged to state on one of its websites that "Nicky Oppenheimer is Chairman of the De Beers Group and as such Chairman of [DBSA, Consolidated, and Centenary]."  (W. David Aff. ¶ 53.)

    b.  <u>Allegations That Jurisdiction Is Appropriate Over De Beers</u>

The Court next reviews allegations that jurisdiction is appropriate over De Beers as an integrated enterprise.

Plaintiff lists four main categories of contacts between De Beers and either the United States, generally, or New York, specifically: (1) De Beers formed the "U.S. Carat Club" to increase sales of diamonds in the United States and met regularly with large American diamond manufacturers and retailers in locations outside the United States to discuss marketing

11

strategies within the United States (Opp'n Mem. 5-6); (2) De
Beers paid over $1 billion for advertisements in the United
States, reimbursed American companies for their advertisements,
often funneling those reimbursements through a third party, and
launched and promoted its Millennium Campaign within the United
States (Opp'n Mem. 6-8; W. David Aff. ¶¶ 20-23); (3) De Beers
sold rough diamonds to Sightholders in the United States,
specifically to Sightholders in New York, and shipped rough
diamonds back and forth between the United States and other
countries, often using third party intermediaries to provide
cover for the transactions (Opp'n Mem. 9-11; W. David Aff. ¶
14.); and (4) De Beers formed a joint venture luxury goods
company De Beers LV Limited ("DBLV"), and through this new
company, sold diamonds at retail stores in the United States,
including at a retail store in New York City (Opp'n Mem. 11-12).

   2.  <u>Allegations Relating to Non-Moving Defendants</u>

   The Court next reviews jurisdictional allegations having to
do specifically with Non-Moving Defendants.  <u>Although Non-Moving
Defendants do not contest personal jurisdiction</u>, Plaintiff argues
that Non-Moving Defendants' contacts with W.B. David, New York
and the United States are relevant to establishing jurisdiction
over Moving Defendants because De Beers is an integrated
enterprise.

        a.  <u>DTC</u>

DTC does not contest personal jurisdiction.  The Court nonetheless reviews allegations about DTC because Plaintiff argues, pursuant to her theory of integrated enterprise, that DTC's contacts are relevant to establishing jurisdiction over Moving Defendants.

According to Plaintiff, DTC is incorporated in the United Kingdom, with an office in London.  DTC allegedly sells ninety-five percent of all De Beers-controlled diamonds.  (Am. Compl. ¶ 10.)

Plaintiff alleges that during W.B. David's thirty-four years as a Sightholder, W.B. David cumulatively purchased hundreds of millions of dollars worth of rough diamonds from DTC and its predecessor.  (Am. Compl. ¶ 4; W. David Aff. ¶ 7.)  In order to purchase diamonds from DTC, W.B. David would travel to De Beers' headquarters in London approximately ten times a year to inspect and purchase pre-selected boxes of rough diamonds.  (Opp'n Mem. 5.)  Although these meetings occurred in London, De Beers would subsequently ship the boxes of diamonds to W.B. David in New York City.  (W. David Aff. ¶ 6).

    b.  <u>CSOV</u>

CSOV does not contest personal jurisdiction.  The Court nonetheless reviews allegations about CSOV because Plaintiff argues, pursuant to her theory of integrated enterprise, that CSOV's contacts are relevant to establishing jurisdiction over

Moving Defendants.

According to Plaintiff, CSOV is incorporated in Switzerland, with an office in London. (Am. Compl. ¶ 12.) Plaintiff alleges that CSOV may be the entity from which W.B. David purchased diamonds before the formation of DTC. (<u>Id.</u>)

       c. <u>Diamdel N.V.</u>

Diamdel N.V. does not contest personal jurisdiction. The Court nonetheless reviews allegations about Diamdel N.V. because Plaintiff argues, pursuant to her theory of integrated enterprise, that Diamdel N.V.'s contacts are relevant to establishing jurisdiction over Moving Defendants.

According to Plaintiff, the "Diamdel Group," composed of various individual Diamdels, is De Beers' largest Sightholder. Plaintiff alleges that the Diamdels sell the five percent of De Beers-controlled diamonds not sold by DTC. (Am. Compl. ¶ 26.)

W.B. David purchased diamonds from one of the Diamdels. (Am. Compl. ¶ 4.) Plaintiff admits that there is some question, however, about the identity of the Diamdel entity from which W.B. David purchased diamonds, and accordingly, about which Diamdel entity Plaintiff should pursue. Consequently, Plaintiff names three Diamdels in her Amended Complaint "with the objective of pursuing whichever turns out to be the main Diamdel company." (Opp'n Mem. 4.)

As to Diamdel N.V., Plaintiff only alleges that it is a

Belgian company.  (Am. Compl. ¶ 13.)

Moving Defendants maintain that Diamdel N.V. is the sole Diamdel from which W.B. David purchased diamonds. (Supp. Mem. 6.)

### 3.  Allegations Relating to Moving Defendants

The Court next reviews jurisdictional allegations as to Moving Defendants.  Because Plaintiff focuses most of her allegations on De Beers as an integrated enterprise, Plaintiff's jurisdictional allegations are relatively sparse as to each individual Moving Defendant.

### a.  Diamdel Ltd.

According to Plaintiff, Diamdel Ltd. is a South African company that sells rough diamonds.  (Am. Compl. ¶ 13; Supp. Mem. 2.)

### b.  Consolidated

According to Plaintiff, Consolidated is incorporated in the Republic of South Africa, with an office in London.  (Am. Compl. ¶ 15.)

Plaintiff alleges that Consolidated historically owned and controlled De Beers.  (Opp'n Mem. 3.)  In 1990, following a corporate reorganization, Centenary took over ownership of De Beers' assets outside of South Africa, and Consolidated retained ownership of De Beers' assets within South Africa.  (Id.)

Plaintiff also alleges that Consolidated has had direct contacts with the United States.  Plaintiff submits evidence that

in the mid-1990s, Consolidated was listed as the sponsor of advertisements that appeared in magazines and newspapers throughout the United States promoting De Beers diamonds.  (Opp'n Mem. 7.)  Similarly, Plaintiff submits evidence that Consolidated sent a $600,000 check to W.B. David in 2002, and asked W.B. David to use that money to reimburse Helzburg Diamonds for an advertisement Helzburg ran on De Beers' behalf.  (W. David Aff. ¶ 22.)

### c.  Centenary

According to Plaintiff, Centenary is incorporated in Switzerland, with an office in Luzern.  (Am. Compl. ¶ 14.)

Plaintiffs allege that Centenary emerged in 1990 to manage De Beers' assets outside of South Africa.  (Opp'n Mem. 2.)

### d.  DBSA

According to Plaintiff, DBSA is incorporated in Luxembourg, with an office in Luxembourg.  (Am. Compl. ¶¶ 9, 11.)

Plaintiff alleges that in 2001, DBSA took over partial ownership of De Beers from Consolidated and Centenary.  (Opp'n Mem. 3.)

### e.  DBI

According to Plaintiff, DBI is incorporated in Luxembourg, with an office in Luxembourg.

Plaintiff alleges that DBI directly owns DBSA and is the "ultimate owner" of De Beers.  (Am. Compl. ¶ 8.)

16

Plaintiff admits that she does not fully understand the function of DBI, but names the entity because of its ownership role in De Beers.  (Supp. Mem. 4.)

### 4.  Defendants Alleged Not to Exist[5]

Finally, the Court reviews allegations by Moving Defendants that several named Defendants do not exist.

#### a.  CSO

According to Plaintiff, CSO is the predecessor of DTC.  (Am. Compl. ¶ 4.)  Plaintiff acknowledges, however, that CSO and the CSOV may be the same company.  (Am. Compl. ¶ 12).

Moving Defendants maintain that they "do not believe that a juridical entity called Central Selling Organization or CSO exists."  (Supp. Mem. 1.)  Moving Defendants suggest that the entity Plaintiff is trying to reach is CSOV, which, as discussed above, does not contest jurisdiction.

#### b.  Diamdel S.A.

According to Plaintiff, Diamdel S.A. is a Luxembourg company.  (Am. Compl. ¶ 13.)  Plaintiff alleges that Diamdel N.V. and Diamdel S.A. are "alternate names for the company in Antwerp that sold diamonds to W.B. David."  (Opp'n Mem. 3.)

---

[5] The two Defendants alleged not to exist, perhaps not surprisingly, do not join in any of the motions to dismiss currently pending before the Court.  Nonetheless, Defendants make the allegation that these Defendants do not exist in their moving papers, and the Court takes this opportunity to address the issue.

Moving Defendants maintain that they know of no Diamdel S.A. incorporated in Luxembourg, but note that the entity Diamdel Ltd. is sometimes referred to by members of the diamond trade as Diamdel S.A.  (Supp. Mem. 1.)

C.  Analysis

Plaintiff argues that this Court can assert personal jurisdiction over Moving Defendants based on De Beers' (i.e. Moving and Non-Moving Defendants') aggregate contacts with the United States and New York, pursuant to (1) New York's general jurisdiction statute, N.Y. C.P.L.R. § 301; (2) New York's long-arm statute, N.Y. C.P.L.R. § 302; (3) Federal Rule of Civil Procedure 4(k)(2); and (4) Section 12 of the Clayton Act.[6] Plaintiff's assumption that the contacts of Non-Moving Defendants can be attributed to Moving Defendants underlies each of her jurisdictional arguments.

The crux of Moving Defendants' motion to dismiss is that Plaintiff provides no legal support to justify attributing the contacts of Non-Moving Defendants to Moving Defendants.  Moving Defendants argue that Plaintiff "cannot rely upon any contacts that [Non-Moving Defendants] have with this district in asserting

---

[6] "Absent an applicable federal grant of personal jurisdiction, a federal court must look to the rules of the forum state to determine if jurisdiction exists."  World Skating Fed'n v. Int'l Skating Union, 357 F. Supp. 2d 661, 665 (S.D.N.Y. 2005). Plaintiff alleges that jurisdiction is appropriate over Moving Defendants pursuant to both federal law and New York state law.

jurisdiction as to the other defendants" because "[p]laintiff's burden of proving personal jurisdiction exists as to each, individual defendant." (Supp. Mem. 12.) Moving Defendants argue that once the contacts of Moving and Non-Moving Defendants are disaggregated, Moving Defendants have insufficient contacts with New York and the United States for personal jurisdiction to be appropriate under any legal theory.

In order to attribute the contacts of Non-Moving Defendants to Moving Defendants, Plaintiff must show that there is a legal basis for doing so, and that Defendants meet the relevant legal standard. Plaintiff fails to show that there is a legal basis for attributing the contacts of Non-Moving Defendants to Moving Defendants under three of its four legal theories, § 302, Rule 4(k)(2), and § 12 of the Clayton Act. Plaintiff instead justifies attributing Non-Moving Defendants' contacts to Moving Defendants solely by relying on the allegation that De Beers is an integrated enterprise. As already noted, the Court has not encountered, and Plaintiff does not offer, any legal support for the contention that "integrated enterprise" has any legal meaning for the purposes of the relevant personal jurisdiction law. Accordingly, the Court finds any further review of these three jurisdictional arguments unnecessary. The Court concludes that Plaintiff has failed to make a _prima_ _facie_ showing of personal jurisdiction, or even a sufficient start towards a _prima_ _facie_

showing, to justify jurisdictional discovery, pursuant to § 302, Rule 4(k)(2), and § 12 of the Clayton Act.

Pursuant to § 301, Plaintiff does allege, both that a legal basis exists, and that Defendants meet the requisite legal standard, for attributing the contacts of Non-Moving Defendants to Moving Defendants.  Plaintiff argues that Non-Moving Defendants are agents and departments of Moving Defendants, pursuant to § 301, and that, accordingly, the contacts of Non-Moving Defendants can be attributed to Moving Defendants.  The Court therefore concludes that the primary jurisdictional question before the Court is whether Non-Moving Defendants are either agents or departments of Moving Defendants, pursuant to § 301.[7]

---

[7] Plaintiff argues that if Non-Moving Defendants are either agents or departments of Moving Defendants, then the jurisdictional contacts of Non-Moving Defendants can be attributed to Moving Defendants.  A successful prima face showing of § 301 jurisdiction over Moving Defendants would thus require a three-part analysis: (1) a showing that Non-Moving Defendants are either agents or departments of Moving Defendants; (2) a showing that Non-Moving Defendants have sufficient contacts with New York to support general jurisdiction under § 301; and (3) a showing that this Court's exercise of personal jurisdiction over Moving Defendants under § 301 comports with federal due process requirements.  Whitaker, 261 F.3d at 208 (laying out the traditionally two-part personal jurisdictional analysis - whether state law permits personal jurisdiction, and if so, whether the exercise of personal jurisdiction under state law comports with federal due process requirements).

Assuming, arguendo, that a contacts and Constitutional analysis must follow the corporate relationship analysis, the Court finds that Plaintiff has made a sufficient start at the necessary showings to make the jurisdictional discovery ordered appropriate.  The Court declines to engage in a more

For the reasons stated below, the Court concludes that Plaintiff has failed to establish a <u>prima facie</u> case of personal jurisdiction over any Moving Defendant, pursuant to agency or department theories of jurisdiction.  The Court finds, however, that Plaintiff has made a sufficient start towards such a showing to justify jurisdictional discovery as to all Moving Defendants except Diamdel Ltd.

    1.  <u>Jurisdiction Pursuant to Section 301</u>

For New York courts to have jurisdiction over a parent corporation because of the activities of its subsidiary, pursuant to § 301, the subsidiary must be either an agent or a department of the parent.[8]  <u>Jazini</u>, 148 F.3d at 184.  The overriding principle governing both theories' application is whether it is fair to "require a foreign corporation to defend itself in New

---

comprehensive analysis of the sufficiency of these showings, until after resolution of the corporate relationship question.

    [8] In most cases in which agency or department theories of personal jurisdiction are alleged, the issue is whether a foreign parent may be subject to jurisdiction because of the activities of its local subsidiary.  Here, Non-Moving Defendants are not local subsidiaries, but rather, other foreign companies not contesting personal jurisdiction.

    Plaintiff and Moving Defendants agree that a foreign company not contesting jurisdiction can be an agent or a department of another foreign company, and thereby subject the latter to personal jurisdiction in the same way as a local subsidiary. (Opp'n Mem. 13 (arguing that Non-Moving Defendants are agents of Moving Defendants); Reply Mem. 7-12 (applying agency and department legal standards to the facts of the instant case).) Accordingly, the Court applies the agency and department analysis to Non-Moving Defendants as if Non-Moving Defendants were local subsidiaries of Moving Defendants.

21

York when it derives some benefit from its affiliate's in-state activities." General Electric Co. v. Circle Air Freight Corp., No. 92 Civ. 6333, 1997 WL 129400, at *8 (S.D.N.Y. Mar. 20, 1997). If Non-Moving Defendants can be shown to be either agents or departments of Moving Defendants, the Court may exercise jurisdiction over Moving Defendants based on the activities of Non-Moving Defendants.

a. Agency Theory of Jurisdiction

To establish that a subsidiary is an agent of its parent corporation, the plaintiff must show that the subsidiary "does all the business which [the parent corporation] could do were it here by its own officials." Jazini, 148 F.3d at 184 (internal quotations and citations omitted). "Courts have interpreted this to mean that the agent's activities in New York must be sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." Stutts v. De Dietrich Group, 465 F. Supp. 2d 156, 162 (E.D.N.Y. 2006) (internal quotations and citations omitted). Facts that may give rise to an inference of agency include an express agency agreement or evidence that the alleged agent took actions binding the foreign corporation to a third party. General Electric Co., 1997 WL 129400, at *9.

The Court finds that Plaintiff has not yet sufficiently

22

alleged a <u>prima facie</u> case of personal jurisdiction over Moving Defendants, pursuant to an agency theory.  Although Plaintiff alleges that Non-Moving Defendants provide necessary services that Moving Defendants would otherwise have to perform themselves, her allegations are conclusory.  Both Plaintiff's allegations and her submitted declarations to the same effect, merely restate, with slight changes, the legal standard for agency.  Allegations of a legal conclusion, absent supporting facts, are insufficient to constitute a <u>prima facie</u> showing. <u>Jazini</u>, 148 F.3d at 184.  Without additional factual allegations as to the relationship between Moving and Non-Moving Defendants, the Court is unable to conclude at this time whether Non-Moving Defendants are agents of Moving Defendants.

   b.   <u>Department Theory of Jurisdiction</u>[9]

In determining whether one business entity is a department of another, the Court must consider the following four factors: (1) common ownership; (2) financial dependency of the subsidiary on the parent corporation; (3) the degree to which the parent corporation interferes in the selection and assignment of the

---

[9] Plaintiff does not directly raise the argument that Non-Moving Defendants are a department of Moving Defendants. Nonetheless, much of the evidence Plaintiff introduces supports a department analysis, such that even Moving Defendants mention the department argument in their papers. (Reply Mem. 7.)  In order to construe Plaintiff's allegations in the light most favorable to her, the Court considers the argument that Non-Moving Defendants are a department of Moving Defendants.

subsidiary's executive personnel and fails to observe corporate formalities; and (4) the degree of control the parent exercises over the marketing and operational policies of the subsidiary. Common ownership is an essential factor; the other three are important, but not essential.  Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120-22 (2d Cir. 1984).

The Court finds that Plaintiff has not yet sufficiently alleged a prima facie case of personal jurisdiction over Moving Defendants, pursuant to a department theory.  Although Plaintiff has produced evidence on the essential factor, common ownership, as to all Moving Defendants except Diamdel Ltd, by alleging that Consolidated, Centenary, DBSA, and DBI all have an ownership interest in Non-Moving Defendants, Plaintiff fails to allege or provide much, if any, evidence as to the other three factors. Plaintiff alleges, for instance, that Defendants have overlapping management, but does not allege that Moving Defendants imposed their leadership on Non-Moving Defendants.  Similarly, Plaintiff alleges that Non-Moving Defendants do a substantial amount of work for Moving Defendants, but does not allege that Non-Moving Defendants are financially dependent on Moving Defendants or that the Moving Defendants control the marketing and sales work of the Non-Moving Defendants.  Without additional allegations as to the amount of control Moving Defendants exercise over Non-Moving Defendants, the Court is unable to conclude at this time whether

Non-Moving Defendants are a department of Moving Defendants.

### 2. Jurisdiction Pursuant to Sullivan Settlement

In the Trustee's Memorandum on the Class Action Settlement ("Settlement Memo"), Plaintiff argues that the Court may relieve itself of the burden of deciding Moving Defendants' motion to dismiss for lack of personal jurisdiction by transferring this case to the District of New Jersey, a forum which Plaintiff suggests has jurisdiction over Moving Defendants pursuant to the Sullivan settlement agreement.  (Settlement Mem. 1.)

In their Reply Memorandum of Law in Response to the Trustee's Memorandum on the Class Action Settlement ("Settlement Reply Memo"), Moving Defendants sharply contest Plaintiff's representation of the Sullivan settlement agreement, arguing that the class action defendants in Sullivan agreed to submit to jurisdiction in the District of New Jersey only for the limited purpose of enforcing the Sullivan settlement.  (Settlement Reply Mem. 1.)

The Court agrees with Moving Defendants' interpretation of the Sullivan settlement agreement.  Defendants consented to jurisdiction in the District of New Jersey solely for the purposes of effectuating the settlement, and not for any other purpose.

Accordingly, the Court DENIES Plaintiff's request to transfer this case to the District of New Jersey.

25

3.  Jurisdictional Discovery

The Court concludes that Plaintiff has failed to establish a prima facie case of jurisdiction over any Moving Defendant, pursuant to agency or department theories of jurisdiction.  This conclusion, however, does not mean that dismissal as to all Moving Defendants is appropriate.

Plaintiff argues that if the Court finds that Plaintiff has failed to establish a prima facie case of jurisdiction over Moving Defendants, then the Court should order jurisdictional discovery.  (Opp'n Mem. 24.)

Moving Defendants argue that jurisdictional discovery is inappropriate because Plaintiff's allegations are merely "sparse" and "conclusory."  (Reply Mem 12.)

For the reasons stated below, the Court agrees with Plaintiff and finds that jurisdictional discovery is appropriate as to all Moving Defendants, except for Diamdel Ltd.

a.  Legal Standard

Without jurisdictional discovery, the Second Circuit has stated that "it may be extremely difficult for plaintiffs . . . to make a prima facie showing of jurisdiction over a foreign corporation that they seek to sue in the federal courts in New York."  Jazini, 148 F.3d at 186.

In a case such as this, where a plaintiff has failed to make a prima facie case of personal jurisdiction, a district court has

26

broad discretion to permit the plaintiff to conduct jurisdictional discovery.  Kiobel v. Royal Dutch Petroleum Co., 2008 U.S. Dist. LEXIS 16592, at *41 (S.D.N.Y. Mar. 4, 2008).  In fact, the Second Circuit has held that a district court errs in granting dismissal without first allowing discovery on "insufficiently developed allegations" regarding the relationship between a parent and its subsidiary given the fact-specific nature of the inquiry into whether a subsidiary's contacts should be imputed to the parent.  In re: Magnetic Audiotape Antitrust Litigation, 334 F.3d 204 (2d Cir. 2003).  As long as a "plaintiff's jurisdictional allegations are neither sparse nor insufficiently specific," but "are simply insufficiently developed at this time to permit judgment as to whether personal jurisdiction is appropriate," a district court is within its discretion to permit jurisdictional discovery.  Tex. Int'l Magnetics, Inc. v. BASF Aktiengesellschaft, 31 Fed. Appx. 738, 739 (2d Cir. 2002).

For the reasons stated below, the Court finds that Plaintiff has met the standard for jurisdictional discovery as to all Moving Defendants, except for Diamdel Ltd., pursuant to both agency and department theories of jurisdiction.

b.  Analysis

After reviewing all of Plaintiff's allegations and evidence, the Court finds that Plaintiff has made a substantial start

towards showing that Non-Moving Defendants are agents and/or departments of Consolidated, Centenary, DBSA, and DBI.

As already discussed, Plaintiff alleges and introduces evidence that there is common ownership and, to some extent, common management among Non-Moving Defendants and Defendants Consolidated, Centenary, DBSA, and DBI. Plaintiff also introduces evidence that De Beers describes itself as an "integrated company" and that De Beers' management admits that the sale and marketing of diamonds are connected to the production and manufacturing of diamonds within their corporate structure. Plaintiff also alleges and submits evidence that Moving Defendants have historically gone to great lengths to hide the extent of their contacts with the United States, which weighs in favor of some jurisdictional discovery being appropriate.

As to the final Moving Defendant, Diamdel Ltd., however, the Court finds that Plaintiff has not alleged sufficient information to make jurisdictional discovery appropriate. Plaintiff fails to allege that Diamdel Ltd. has an ownership interest in Non-Moving Defendants, and in fact, Plaintiff's allegations suggest that Diamdel Ltd. is a sister company, rather than a parent company, to Non-Moving Defendants. Furthermore, Plaintiff admits that W.B. David purchased diamonds from only one Diamdel, and that of the three Diamdels named in her Amended Complaint, Plaintiff intends to pursue only the "main" one. Moving Defendants allege

that the sole Diamdel that sold diamonds to W.B. David was Non-Moving Defendant Diamdel N.V., and Plaintiff leaves this allegation entirely unrebutted.

D. <u>Conclusion</u>

The Court GRANTS Moving Defendants' motion to dismiss for lack of personal jurisdiction as to Diamdel Ltd. As to all other Moving Defendants, the Court DENIES the motion to dismiss for lack of personal jurisdiction, without prejudice to refiling after the completion of limited jurisdictional discovery as to whether Non-Moving Defendants are either agents or departments of Moving Defendants.[10]

III. <u>Motions to Dismiss for Insufficiency of Service and for Failure to State a Claim for Which Relief Can Be Granted</u>

The Court also DENIES Defendants' motions to dismiss for insufficiency of service and for failure to state a claim for which relief can be granted, without prejudice to refiling after the completion of jurisdictional discovery. Jurisdictional issues, once raised, must be addressed before delving into substantive issues. Furthermore, in this case, the jurisdictional question as to the relationships among Defendants

---

[10] Although Plaintiff has made sufficient allegations to justify jurisdictional discovery pursuant only to the agency and department theories of § 301, such discovery may nonetheless provide evidence that jurisdiction is appropriate pursuant to other legal provisions as well. <u>See</u> <u>Puerto Rico Mar. Shipping Auth. v. Almogy et. al.</u>, 510 F. Supp. 873, 877-78 (S.D.N.Y. 1981).

may bear on more substantive issues as well, such as sufficiency of service of process and the sufficiency of the claims.[11]

Accordingly, the Court DENIES each of these motions, without prejudice to refiling after the completion of jurisdictional discovery.

IV.  Leave to Amend

Commonly a plaintiff facing a motion to dismiss asks, in the alternative, for leave to amend the complaint if the Court finds that the motion to dismiss should be granted.  Here, Plaintiff has not requested leave to amend her Amended Complaint, and the Court does not consider the issue sua sponte.

V.  Defendants Alleged Not to Exist

Finally, the Court turns to Moving Defendants' allegations that Defendants CSO and Diamdel S.A. do not exist.

No later than Friday, February 6, 2009, Plaintiff shall inform the Court whether (1) Plaintiff disagrees with Moving Defendants' representation that CSO and Diamdel S.A. do not

---

[11] If Non-Moving Defendants are agents or departments of Moving Defendants, for instance, service on Non-Moving Defendants may also affect service on Moving Defendants.  See Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 405 (7th Cir. 1986) (stating that "where one corporation so controls another corporation that, as a practical matter, the two entities function as one, service on one corporation is effective as to both").

In addition, the relationships among Defendants bear on the sufficiency of Plaintiff's claims as against each individual Defendant, and also bear on the kinds of antitrust conspiracies that can be alleged.

exist; and (2) whether Plaintiff objects to the dismissal of CSO and Diamdel S.A. from the instant action.

Upon receiving Plaintiff's response, the Court may order additional briefing and/or discovery on this issue.

VI.   <u>Conclusion</u>

For the reasons stated above, the Court GRANTS Moving Defendants' motion to dismiss for lack of personal jurisdiction with regards to Defendant Diamdel Ltd. (D.E. 154).  As to all other Moving Defendants, the Court DENIES the motion to dismiss for lack of personal jurisdiction (D.E. 154), without prejudice to refiling after the completion of jurisdictional discovery on the issue of whether Non-Moving Defendants are either agents or departments of Moving Defendants.  Similarly, the Court DENIES Defendants' motions to dismiss for insufficiency of service (D.E. 154) and failure to state a claim for which relief can be granted (D.E. 162), without prejudice to refiling after the completion of jurisdictional discovery.  The Court also orders Plaintiff to respond to Moving Defendants' allegations that Defendants CSO and Diamdel S.A. do not exist.

The Court is today entering a separate Order referring this case to Magistrate Judge Kevin Nathaniel Fox for management of jurisdictional discovery. All jurisdictional discovery shall be completed by April 15, 2009.

SO ORDERED.

Dated:  New York, New York
        January **22**, 2009

Kimba M. Wood
United States District Judge

32