UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

ANGELA TESE-MILNER as CHAPTER 7
TRUSTEE OF THE ESTATE OF W.B.
DAVID & CO., INC.,

        Plaintiff,                                  04 Civ. 5203 (KMW)
                                                        OPINION & ORDER

-against-

DIAMOND TRADING COMPANY, LTD.,

        Defendant.
------------------------------------------------------X

Wood, U.S.D.J.:

        On April 13, 2010, Plaintiff Angela Tese-Milner ("Plaintiff"), as Chapter 7 Trustee of the Estate of W.B. David & Co., Inc. ("W.B. David"), filed a Second Amended Complaint (the "SAC") against Defendant Diamond Trading Company, Ltd. ("Defendant"), alleging violations of various federal and state antitrust laws. [Dkt. No. 262]. In an Opinion and Order dated September 29, 2011, this Court dismissed the SAC for failure to state a claim. *Tese-Milner v. Diamond Trading Co., Ltd.*, 04 Civ. 5203, 2011 WL 4501336 (S.D.N.Y. Sept. 29, 2011) (Wood, J.) [Dkt. No. 286]. Plaintiff appealed and, on January 10, 2013, the Second Circuit affirmed in part, vacated in part, and remanded the case for further proceedings. *W.B. David & Co., Inc. v. De Beers Centenary AG*, 507 F. App'x 67 (2d Cir. 2013). Defendant now renews its motion to dismiss the SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). [Dkt. No. 293].

        For the reasons stated below, the Court GRANTS Defendant's motion to dismiss, with prejudice.

1

## I. BACKGROUND[1]

Defendant is a member of a group of companies that are collectively known as the De Beers Group ("De Beers" or the "De Beers Group"). The De Beers Group produces and sells rough diamonds. (SAC ¶¶ 7–8). From 1969 to 2003, W.B. David was a De Beers's "Sightholder"—a company selected by De Beers to purchase and sell De Beers's rough diamonds. (SAC ¶¶ 63–64).

On appeal from this Court's decision dismissing the SAC in its entirety, the Second Circuit affirmed the dismissal of all but one of Plaintiff's allegations. *See W.B. David & Co., Inc.*, 507 F. App'x at 70. The Second Circuit held that one claim, which this Court had concluded was barred by the applicable statute of limitations, in fact related back to the original complaint and was, therefore, timely. *See id.* This one remaining claim is that "De Beers's 'sight' system was, or was an attempt or conspiracy to create, an unlawful restraint of trade and/or unlawful monopoly." *Id.* It "appears in the second amended complaint at paragraphs 34, 48, and 63–67." *Id.* The Court will refer to this claim as the "Sight Claim."[2]

The Sight Claim alleges that the De Beers Group, including Defendant, sold rough diamonds to its Sightholders through events called "Sights," at which Sightholders were shown one or more boxes of diamonds and given the opportunity to purchase them. (SAC ¶¶ 63, 65). Plaintiff alleges that Defendant, as well as Defendant's predecessor, CSO Valuations ("CSOV"), pre-selected the diamonds presented to each Sightholder, who were told the approximate price in advance and were generally required to accept the entire box or "leave empty-handed." (SAC ¶

---

[1] The Court's September 29, 2011, Opinion and Order detailed this case's procedural and factual background, familiarity with which is assumed. *See Tese-Milner*, 2011 WL 4501336, at *1–4.

[2] The SAC had challenged a wide variety of conduct, in addition to the Sight Claim, that Plaintiff contended violated federal and state antitrust laws, including that Defendant horizontally restrained trade via agreements with a competitor, (SAC ¶¶ 35–47), vertically restrained trade by entering into curtailment and sales agreements, (SAC ¶¶ 48–62), engaged in manipulative advertising and marketing activities, (SAC ¶¶ 68–94), and strategically terminated Sightholders in order to increase its control over the United States rough diamond market, (SAC ¶¶ 95–122). These allegations remain dismissed. *See W.B. David & Co., Inc.*, 507 F. App'x at 70.

2

67.a). At the Sights, De Beers's executives and account managers allegedly met with Sightholders and obtained detailed information about marketing efforts, finances, customer base, and distribution plans. (SAC ¶ 67.b). According to Plaintiff, Defendant required W.B. David and other Sightholders to communicate with it through one of its six brokers, who, although purportedly acting on behalf of Sightholders, in fact "frequently conspired" with Defendant "to control Sightholder purchases and business practices." (SAC ¶¶ 67.f, 67.h). Plaintiff further alleges that Defendant "used the brokers as conduits to communicate with Sightholders and other industry members about the marketing, advertising, pricing, sales and distribution of its diamonds" and "to assist with disguising payments for marketing and advertising" in the United States. (SAC ¶ 67.i). Plaintiff contends that the Sightholder sales process was an unlawful vertical restraint, (SAC ¶ 48), and that W.B. David incurred damages by purchasing rough diamonds from Defendant at artificially inflated prices, (SAC ¶ 34).

## II.  ANALYSIS

Defendant argues that the Sight Claim, Plaintiff's one remaining allegation, does not allege facts upon which relief could be granted under any of the SAC's six counts. The Court agrees and therefore grants Defendant's motion to dismiss pursuant to Rule 12(b)(6). The SAC's six counts are: combination and conspiracy to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1 ("Count I"); (2) monopolization in violation of § 2 of the Sherman Act, 15 U.S.C. § 2 ("Count II"); (3) attempt to monopolize in violation of § 2 of the Sherman Act ("Count III"); (4) conspiracy to monopolize under § 2 of the Sherman Act ("Count IV"); (5) combination and conspiracy to restrain trade in violation of the Wilson Tariff Act, 15 U.S.C. § 8 et. seq. ("Count V"); and (6) combination and conspiracy to monopolize and restrain trade in

violation of the Donnelly Antitrust Act, N.Y. Gen. Bus. Law § 340 ("Count VI").  (SAC ¶¶ 123–61).

    A. **Motion to Dismiss Standard**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The Court must accept as true all well-pleaded factual allegations in the complaint and "draw[ ] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

    B. **The SAC Fails to Allege a Violation of § 1 of the Sherman Act (Count I)**

Plaintiff's first count asserts that Defendant conspired to restrain trade in violation of § 1 of the Sherman Act.  Section 1 of the Sherman Act makes it illegal to enter into a "contract, combination ... or conspiracy" to restrain trade or commerce.  15 U.S.C. § 1.  "A violation of Section 1 generally requires a combination or other form of concerted action between two legally distinct entities resulting in an unreasonable restraint on trade." *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006).

The Sight Claim does not adequately allege a conspiracy resulting in an unreasonable restraint on trade. The Sight Claim states simply that Defendant "conspired" with brokers in the sight system "to control Sightholder purchases and business practices" by using the brokers "as conduits to communicate with Sightholders and other industry members about the marketing, advertising, pricing, sales and distribution of its diamonds … and to assist with disguising payments for marketing and advertising." (SAC ¶ 67); (Pl.'s Opp'n Br. at 6 [Dkt. No. 296]).

This allegation of conspiracy is conclusory and therefore insufficient to state a § 1 claim. *See Twombly*, 550 U.S. at 555, 557 (explaining that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" and "a naked assertion of conspiracy in a § 1 complaint … without some further factual enhancement … stops short of the line between possibility and plausibility of entitlement to relief" (internal alterations and quotations omitted)). Moreover, the allegation does not adequately evidence an unreasonable restraint on trade; suppliers are generally permitted to control how their products are sold, and the mere use of brokers to facilitate the advertising, marketing, and sale of one's products is not anticompetitive. *See Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 602 F.2d 1025, 1030 (2d Cir. 1979) ("A manufacturer may announce the terms under which he will market his product and deal only with those customers who agree to abide by the terms. Similarly, a manufacturer is free to choose the type of mechanism through which he will distribute his goods and can designate certain sales representatives as his exclusive agents." (internal citation omitted)); *cf. Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763–64 (1984) ("In order to assure an efficient distribution system, manufacturers and distributors constantly must coordinate their activities to assure that their product will reach the consumer

persuasively and efficiently."); *Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 54–55 (1977) (describing the competitive benefits of vertical restrictions).

**C. The SAC Fails to Allege a Violation of § 2 of the Sherman Act (Counts II, III, and IV)**

Plaintiff's second count asserts that Defendant monopolized in violation of § 2 of the Sherman Act. Plaintiff's third and fourth counts similarly assert that Defendant attempted to monopolize and conspired to monopolize, respectively, in violation of § 2 of the Sherman Act. Section 2 makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States or with foreign nations." 15 U.S.C. § 2. All three of Plaintiff's § 2 counts fail because the Sight Claim does not allege anticompetitive conduct.

1. Count II: Unlawful Monopolization

To state a claim for monopolization under § 2 of the Sherman Act, "a plaintiff must establish '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)). Importantly, "the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (noting that "[t]he mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system"); *see also Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 447–48 (2009) ("Simply possessing

6

monopoly power and charging monopoly prices does not violate § 2."); *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188–89 (2d Cir. 1992) (explaining that, "[t]o sustain a § 2 claim, the plaintiff must prove not only that the defendant had the power to monopolize, but also that it willfully acquired or maintained its power, thereby causing unreasonable 'exclusionary,' or 'anticompetitive' effects" (internal citations omitted) (quoting *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985))).

Plaintiff's monopolization claim fails because, even assuming Defendant possessed monopoly power in the relevant market,[3] the Sight Claim does not allege that Defendant's sight system was anticompetitive. No assertion is made, for instance, that the sight system excluded potential competitors or impaired the opportunities of rival firms. Plaintiff nonetheless points to three allegations that it contends suggest conduct harmful to competition: (i) that Defendant granted only certain customers the right to be Sightholders and have the opportunity to purchase rough diamonds; (ii) that diamonds were pre-selected for the Sights, and Sightholders were required to accept all diamonds in the selection or receive none; and (iii) that Sightholders were required to communicate with Defendant through brokers. (Pl.'s Opp'n Br. at 11–12 (citing SAC ¶¶ 63, 67)).

These allegations, however, do not suggest exclusionary or anticompetitive conduct. "As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co.*, 555 U.S. at 448 (citing *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)). Exceptions to this general rule are "rare"

---

[3] Plaintiff and Defendant vigorously dispute whether the SAC satisfactorily alleges that Defendant possessed monopoly power in the relevant market. The Court, however, need not resolve that issue, because the Sight Claim does not adequately allege Defendant's willful acquisition or maintenance of that power. *Cf. Trans Sport*, 964 F.2d at 188 (noting that, although "[o]rdinarily … we would first determine the relevant market and then decide whether [the defendant] possessed monopoly power in that market[,] … we do not pursue such an inquiry because we agree with the District Court that even if [the defendant] possessed monopoly power in the relevant market, however construed, [the plaintiff's] § 2 claim cannot prevail" (internal citations omitted)).

and appear limited to instances in which a monopolist's unilateral actions are intended to impair competition. *See id.* (noting "predatory" pricing and certain instances of unilateral refusals to deal with rivals); *cf., e.g.*, *Lorain Journal Co. v. United States*, 342 U.S. 143 (1951) (holding that a monopolist newspaper violated § 2 by refusing to sell advertising space to merchants who also purchased advertising from a local radio station). Defendant's decision to distribute its product through the sight system was its "right … freely to exercise [its] independent discretion" and did not constitute a violation of the Sherman Act in the absence of any alleged "purpose to create or maintain a monopoly." *Colgate*, 250 U.S. at 307.[4]

    2.  <u>Counts III and IV: Attempted Monopolization and Conspiracy to Monopolize</u>

A claim for attempted monopolization or conspiracy to monopolize, like a monopolization claim, requires a showing of anticompetitive conduct. To demonstrate attempted monopolization, a plaintiff must prove that the defendant has (1) "engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). Similarly, conspiracy under § 2 is shown by "'(1) proof of a concerted action deliberately entered into with the specific intent to achieve an unlawful monopoly, and (2) the commission of an overt act in furtherance of the conspiracy.'" *AD/SAT, Div. of Skylight, Inc. v. Associated Press*,

---

[4]   Plaintiff unpersuasively asserts that its allegations are "equivalent to, if not more specific," than those held sufficient in *Trugman-Nash, Inc. v. New Zealand Dairy Board*. (*See* Pl.'s Opp'n Br. at 12 (citing 942 F. Supp. 905, 920 (S.D.N.Y. 1996) (Haight, J.))). *Trugman-Nash* is inapposite; the circumstances and allegations in it differ substantially from what is alleged in the SAC. In *Trugman-Nash*, the plaintiffs pled that fifteen New Zealand dairy cooperatives had conspired to form "an export cartel" and "earn monopolistic profits" through a single exporter. 942 F. Supp at 912, 920 (noting that "[t]he gravamen of plaintiffs' antitrust charges is that they cannot deal directly and individually with New Zealand dairy farmers or cooperatives, in an effort to … pay a lower price for the cheese plaintiffs then resell in the American market"). No such horizontal conspiracy among potential competitors is alleged in the Sight Claim.

181 F.3d 216, 233 (2d Cir. 1999) (quoting *Int'l Distribution Centers, Inc. v. Walsh Trucking Co., Inc.*, 812 F.2d 786, 795 (2d Cir. 1987)).

Because the SAC does not allege anticompetitive conduct or, similarly, an intent to achieve an unlawful monopoly, counts three and four fail for the same reason count two fails. *Cf., e.g.*, *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 139 (1998) (noting that, unless alleged agreements "harmed the competitive process, they did not amount to a conspiracy to monopolize").

### D. Plaintiff's Remaining Claims Are Also Dismissed (Counts V and VI)

Plaintiff also brings claims for combination and conspiracy to restrain trade in violation of the Wilson Tariff Act, 15 U.S.C. § 8, and for combination and conspiracy to monopolize and restrain trade in violation of the Donnelly Antitrust Act, N.Y. Gen. Bus. Law § 340.

Plaintiff's claim under the Wilson Tariff Act is dismissed on the same grounds as her Sherman Act claims. *See Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 75 n.8 (2d Cir. 1977) ("In so far as the substantive antitrust provisions of the Wilson Tariff Act are concerned, they follow the same pattern as the Sherman Act."); *see, e.g.*, *Ivoclar Vivadent, Inc. v. Tri-Cnty. Dental Supply, Inc.*, 04 Civ. 261, 2006 WL 2516511, at *3 n.10 (W.D.N.Y. Aug. 29, 2006) ("[W]hen a party has failed to make out a claim under section 1 of the Sherman Act, any attendant Wilson Tariff Act claim will also necessarily fail.").

Plaintiff's claim under the Donnelly Antitrust Act is also dismissed. The Donnelly Antitrust Act "'should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result.'" *Gatt Commc'ns, Inc. v. PMC Associates, L.L.C.*, 711 F.3d 68, 81 (2d Cir. 2013) (quoting *X.L.O. Concrete Corp. v. Rivergate Corp.*, 634 N.E.2d 158, 161 (N.Y.

1994)).  Plaintiff does not suggest any "State policy [or] differences in the statutory language or the legislative history" that would justify construing the Donnelly Antitrust Act differently from the Sherman Act in this case.  *Id.*

### E. Plaintiff's Request to Amend the SAC is Denied

Plaintiff requests leave to replead if the SAC is dismissed.  A court should grant leave to amend "freely … when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[T]his circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."  *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006); *see also Cruz v. TD Bank, N.A.*, 12-1200-CV, 2013 WL 6642832, at *2 (2d Cir. Dec. 18, 2013) ("[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead.").  Nonetheless, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).  "'It is within the sound discretion of the district court to grant or deny leave to amend.'"  *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 139 (2d Cir. 2011) (alteration omitted) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

Plaintiff's request to replead is denied as futile.  Plaintiff explains that she seeks the opportunity to replead in order "to renew claims against CSO Valuations, A.G. ("CSOV"), a member of the De Beers Group, which participated in the Sight system prior to 2001." (Pl.'s Opp'n Br. at 13).  The Court, however, in an order issued after remand in this case, has already ruled that CSOV could not be added as a defendant.  [Dkt. No. 292].  Plaintiff's attempt to add CSOV to the SAC was previously denied, *see Tese-Milner v. Diamond Trading Co., Ltd.*, 04

Civ. 5203, slip. op. at 25–28 (S.D.N.Y. Feb. 24, 2010) (Wood, J.) [Dkt. No. 267], and Plaintiff's appeal addressed only Defendant Diamond Trading Company.[5]

Plaintiff proposes no other amendment besides seeking to add CSOV.  In a joint letter to the Court following the Second Circuit's remand, in fact, Plaintiff stated explicitly that her request to add CSOV "would be the only amendment to the Second Complaint."  [Dkt. No. 292].  In the absence of any other suggested amendment, and given Plaintiff's two previous opportunities to amend the complaint in this case, the Court concludes that Plaintiff's request to replead should be denied.  *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (request to replead should be denied where repleading would be futile); *cf. WC Capital Mgmt., LLC v. UBS Sec., LLC*, 711 F.3d 322, 334 (2d Cir. 2013) (holding that the district court acted within its discretion in denying a conclusory request for leave to amend).

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and the SAC is dismissed with prejudice.  The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated: New York, New York
January 6, 2014

_____/s/_____
Kimba M. Wood
United States District Judge

---

[5] The Court notes, moreover, that, contrary to Plaintiff's assertion, (*see* Pl.'s Opp'n Br. at 13–14), the relation back of the Sight Claim to the original complaint does not, on its own, permit Plaintiff to add CSOV as a defendant.  Unlike Defendant Diamond Trading Company, CSOV was not named as a defendant in the original complaint. (*See* Complaint at 11–22 [Dkt. No. 1]).  In order to add another party as a defendant, Federal Rule of Civil Procedure 15 requires more than just the relation back of underlying facts; it also requires that, within 120 days after a complaint is filed, the party to be added (i) "received such notice of the action that it will not be prejudiced in defending on the merits" and (ii) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).  Plaintiff provides no indication that these requirements are met.